## MINERVA SAV & TR CO v LYDER

Ohio Appeals, 5th Dist, Stark Co
No 1051. Decided          , 1930

William Simpson, Canton, and Lynch, Day, Pontius & Lynch, Canton, for Sav & Tr Co.

C. C. Connell, Youngstown, and W. S. Ruff, Canton, for Lyder.

**LEMERT, J.**

We believe that this whole case rests upon the construction to be given the collateral agreement of March 29th, 1928. We further believe that the language used in pledging this stock should be interpreted in its ordinary legal meaning and that it is to be strictly construed.

"The general rules of construction apply in construing a contract of pledge, in accordance with which the rights and liabilities of the parties are, if possible, to be construed and enforced according to the intention of the parties as determined from the terms of the contract of pledge and the subject matter, and the course of dealing to which it relates; and where the intention is clear and contravenes no rule of law and sufficient words are used to arrive at the intention, it should be enforced irrespective of technical rules of construction. If the contract is susceptible of two constructions, the one most favorable to the pledgee should not be adopted; but that construction should be given to it which is the more favorable to the pledgor where the contract has been prepared by the pledgee; or which is more favorable to the pledgee, where prepared by the pledgor."

49 Corpus Juris
920, Section 51.

The evidence in the record in this case shows that the contract of pledge was prepared by the bank, the pledgee.

"As to what debts or liabilities are secured by a pledge is controlled by the intention of the parties, as determined from the whole transaction between them; and where the contract, prepared by the pledgee, is not clear as to whether the collateral pledged shall secure a particular indebtedness, it must be construed in favor of the pledgor."

49 Corpus Juris
936, Section 77.

This collateral security clearly states— **Such security to be used as collateral for such loans as may be made by the Lynn R. Riddle Company or Lynn R. Riddle personally.** We believe that the wording of this collateral agreement is plain, clear and unambiguous and that it means just what it says; that is, for such loans **as may be made** by the Lynn R. Riddle Company or Lynn R. Riddle personally.

It has been well settled in Ohio and other jurisdictions that the renewing of notes from time to time in no way extinguishes the original debt. It is simply an extension of the time of payment and a change as to the evidence of the debt. It has been well decided that the mere existence of a former debt due the pledgee does not authorize him to detain the pledge for that debt when it has been put in his hands for another debt, unless there is some just presumption that such was the intention of the parties. The same rule applies to a subsequent debt or a loan contracted by the pledgor, and in such case the new debt or loan will not attach to the pledge, unless

the same creates a presumption that the new debt or loan was made upon the credit of the pledge, and it was so understood by the parties.

Therefore, in a proper construction of this collateral agreement, like every other written paper or contract, the intention of the parties is to be considered and the surrounding facts and circumstances and the language used, and from all these things then arrive at the intention of the parties. Therefore, from a thorough examination of this record and the authorities cited, it seems to us that in applying these propositions of law to the facts in this case, we find and believe that Joseph B. Lyder pledged one hundred shares of National Acme stock, to be used as collateral for such loans as may be made by the Lynn R. Riddle Company; that at the time of the making of this note there existed a loan from the bank to the Lynn R. Riddle Company, in evidence of which they held a note of the Lynn R. Riddle Company and that the renewal of this note thereafter was not such a loan as was within the minds and contemplation of the parties at the time of the execution of the collateral agreement contract, and that thereafter the bank had no right to apply the proceeds of the sale of this stock to the liquidation of the debt upon the $2000.00 note and that the plaintiff is entitled to recover the amount so mis-applied, together with interest.

Therefore, it follows that the finding and judgment of the Court below will be and the same is hereby affirmed. Exceptions may be noted.

Sherick, J, concurs.